John Francis FRY, Petitioner—
Appellant,

v.

Cheryl K. PLILER, Warden,
Respondent—Appellee.

No. 04–16876.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 18, 2005.

Decided Feb. 2, 2006.

---

\* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Victor S. Haltom, Esq., Sacramento, CA, for Petitioner—Appellant.

Morris Beatus, Esq., Ross C. Moody, AGCA—Office of the California Attorney General (SF), San Francisco, CA, for Respondent—Appellee.

Before: D.W. NELSON, RAWLINSON, and BEA, Circuit Judges.

## MEMORANDUM *

After two mistrials on account of hung juries, John Fry was convicted of two counts of first degree murder in California Superior Court.[1] His conviction was affirmed by the California Court of Appeal and the California Supreme Court. Fry's petition for federal writ of habeas corpus

---

1. Because the parties are familiar with the factual and procedural history we do not include them here except as necessary to explain our disposition.

under 28 U.S.C. § 2254 was denied by the district court. We have jurisdiction under 28 U.S.C. § 2253(a) and we affirm.[2]

■ The exclusion of Pamela Maples' testimony involved an unreasonable application of clearly established federal law, because her testimony was "material and would have substantially bolstered [Fry's] claims of innocence." *Chia v. Cambra*, 360 F.3d 997, 1003 (9th Cir.2004). Maples did overhear large portions of a conversation involving her cousin, Anthony Hurtz, in which Hurtz indicated that he had committed a double homicide. Because Maples did hear large portions of this conversation—and because the portions of the conversation Maples did hear involved idiosyncratic facts exactly matching the facts surrounding the murder of Cynthia and James Bell, the victims in this case—we find her testimony to be sufficiently reliable. However, even assuming constitutional error, the exclusion of Maples' testimony was harmless because it did not have "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citation omitted).[3]

■ Second, the exclusion of Robert Morse's testimony was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, because, if admissible at all, the excluded evidence was not substantive evidence of a third party's culpability in the charged homicides. Therefore, Morse's testimony was not of significant importance to Fry's third party culpability defense and its exclusion was not constitutional error. *See Chia*, 360 F.3d at 1004. Assuming constitutional error in excluding Morse's testimony, that error was harmless because it did not have a substantial and injurious effect on the outcome of the trial. *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710.

AFFIRMED

RAWLINSON, Circuit Judge, dissenting.

I respectfully dissent from that portion of the disposition concluding that the exclusion of Pamela Maples' testimony was harmless error under *Brecht v. Abramson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

Using the *Brecht* analysis, constitutional error is harmless unless it has a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638, 113 S.Ct. 1710.

2. Fry is in custody pursuant to a judgment of a state court. Therefore, the writ of habeas corpus will not be granted unless the state court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). We review *de novo* the district court's denial of a 28 U.S.C. § 2254 petition for writ of habeas corpus. *Bailey v. Rae*, 339 F.3d 1107, 1111 (9th Cir.2003).

3. Fry contends that this court should not apply the *Brecht* harmless error standard because the state appellate court failed to conduct a meaningful prejudice review. We have held, however, that the *Brecht* standard applies uniformly in all federal habeas corpus cases under § 2254 regardless of the error standard, if any, applied by the state court. *Bains v. Cambra*, 204 F.3d 964, 976 (9th Cir. 2000); *see also Inthavong v. LaMarque*, 420 F.3d 1055, 1059 (9th Cir.2005).

In performing the *Brecht* analysis, "we consider the record as a whole," including the strength of the State's case. *Id.*

In my view, the record as a whole militates in favor of a conclusion that exclusion of Ms. Maples' testimony substantially and injuriously affected the jury's verdict in this case.

As the district court noted, this was John Fry's third trial, with the two prior juries having failed to reach a verdict. In this third trial, even in the absence of Ms. Maples' exculpating testimony, the jury deliberated for five weeks before convicting Fry.

Ms. Maples was the only unbiased witness presented by either side. She also implicated her cousin in the murder for which Fry was on trial. Such testimony is generally recognized as having a powerful impact on jurors. *See Skipper v. South Carolina,* 476 U.S. 1, 8, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (noting that testimony of a disinterested witness "would quite naturally be given much greater weight by the jury."); *see also Bailey v. Rae,* 339 F.3d 1107, 1116 (9th Cir.2003) ("Independent corroboration of the defense's theory of the case by a neutral and disinterested witness . . . can undermine confidence in a verdict.").

Because I am convinced that the exclusion of Ms. Maples' testimony was not harmless, I respectfully dissent.